**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

WENDY W. BUBNA,

        Plaintiff,

vs.

ANDREW SAUL, Commissioner of Social Security,

        Defendant.

Case No: 2:20–cv–01020-VCF

**<u>ORDER</u>**

      This matter involves Plaintiff Wendy W. Bubna's appeal from Defendant Andrew Saul's final decision denying Bubna's social-security benefits. (ECF No. 1-1). Before the Court is Bubna's Motion to Remand (ECF No. 11). In response, the Commissioner filed an opposition and Cross Motion to Affirm (ECF No. 12, 13) and Bubna replied (ECF No. 14). For the reasons stated below, the Court denies Bubna's Motion to Remand and grants Saul's Motion to Affirm.

**I. BACKGROUND**

      This case arises under Title II and Title XVI of the Social Security Act. On September 8, 2014, Wendy W. Bubna filed her application for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act, 42 U.S.C. §§ 416, 423. (*See* Admin. Rec. at 149-50). Bubna's applications were denied upon initial determination. *Id*. at AR 12-25. Following the administrative proceedings, in a decision dated March 6, 2017, Administrative Law Judge (ALJ) Norman Bennett found Plaintiff not disabled. (AR 12-25.) The ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner) after the Appeals Council denied Plaintiff's request for review (AR 1–6). Plaintiff filed an action pursuant to 42 U.S.C. § 405(g) in this District Court on April 15, 2018. Pursuant to a stipulation between the parties, the court

remanded the case to the agency for further administrative proceedings (AR 1454–56). Upon remand, the ALJ held another administrative hearing on January 17, 2020, which Plaintiff and her representative attended (AR 1407–28).

In a decision dated February 10, 2020, the ALJ found Plaintiff not disabled as defined in the Social Security Act, from June 1, 2014, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)). (AR 1385–99). The ALJ found Plaintiff to be disabled as of her 50th birthday, August 16, 2019, under Medical-Vocational Rule 201.14. *Id.*

Plaintiff did not file written exceptions to the decision and the ALJ's decision became the final decision of the Commissioner. Plaintiff has now filed this action pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security applicants and recipients have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). Where, as here, the Commissioner of Social Security renders a final decision denying a person benefits, the District Court must review the Commissioner's decision to determine whether it accords with the Due Process Clause. *Eldridge*, 424 U.S. at 340; 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review is limited. The Court examines the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more

than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

### III. DISCUSSION

I.      **Factual Background**

The ALJ applied the five step sequential analysis pursuant to 20 C.F.R § 404.1520. The ALJ determined that Bubna suffered from a severe combination of impairments including chronic regional pain syndrome (CRPS), status post two back surgeries, status post spinal cord stimulator implant, scoliosis, and mood disorder (20 CFR 404.1520(c)). (AR 1388).

The ALJ stated that he read and considered all the medical evidence in the record, including opinions and reports of the treating physician, state agency psychological and physical medical consultants Bonnie M. Winkleman, Psy.D., and the opinion of C. Reynoso, APN. The ALJ also considered the third-party function report of the Plainitff's spouse, Richard Bubna. (AR 1385 -1398). The ALJ found that Plaintiff Bubna did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (AR 1387).

The ALJ found that Bubna had the residual functional capacity, to perform sedentary work as defined in 20 CFR404.1567(a)except she can lift and carry 10 pounds occasionally and 5 pounds frequently. She can stand and/or walk 2 hours in an 8-hour workday. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs, balance, kneel, stoop, crouch and crawl. She is capable of simple repetitive tasks with a reasoning level of 2-3. She is capable of occasional contact with supervisors, coworkers and the general public. (AR 1390).

At step four of the sequential analysis, the ALJ found Plaintiff is unable to perform any of her past relevant work (20 CFR 404.1565). (AR 1396). Plaintiff has past relevant work as an inspector (light exertion level) and manager (light exertion level). The vocation expert testified that the demands of Plaintiff's past relevant work exceed the residual functional capacity and that Plaintiff was unable to perform past relevant work as actually or generally performed. (AR 1397).

At step five, the ALJ found Plaintiff could perform the occupations of mail sorter (DOT # 239.687-014), inspector (DOT # 726.684-050), and hand packager (DOT # 920.687-030). (AR 1398).

Bubna appeals the Commissioner's decision on several grounds and argues that the ALJ committed reversible error. A summary of the errors includes (1) the ALJ improperly addressed the medical evidence, (2), the ALJ improperly rejected the Plaintiff's testimony, (3), the ALJ improperly rejected the Lay Witness Testimony, and (4), the ALJ's step five findings is not supported by substantial evidence. (ECF No. 11).

The Commission argues that the ALJ properly weighed the medical evidence, including evidence that Bubna is not disabled.

***I. Whether the ALJ articulated clear and convincing reasons for rejecting Bubna's testimony?***

If the Commissioner decides to discount the claimant's testimony regarding his or her subjective symptoms, the Commissioner must engage in a two-step analysis before finding the claimant's testimony

lacks credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted).

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). An ALJ may consider a claimant's reputation for truthfulness and inconsistencies in the claimant's testimony when determining credibility. *Burch*, 400 F.3d at 680. However, this court cannot affirm an agency's decision on a ground an agency did not invoke in making its decision originally. *See Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001).

The ALJ correctly applied the two-step procedure that is required to discount a claimant's testimony. (*See* Admin. Rec. at 20 and 1390). First, the ALJ identified an underlying medically determinable impairment: chronic regional pain syndrome (CRPS), status post two back surgeries, status post spinal cord stimulator implant, scoliosis, and mood disorder (20 CFR 404.1520(c)). (AR 1388). Second, the ALJ evaluated the intensity, persistence, and limiting effects of Bubna's symptoms. *Id.* (AR 1390-91). The ALJ identified several reasons and provided clear and convincing reasons for rejecting Bubna's testimony. The ALJ found that the Plaintiff's medically determined impairments could reasonably be expected to produce the alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record. (AR 20). The ALJ found that the there is nothing in the record to support a more restrictive functional limitations. Diagnostic imaging of Plaintiff's left ankle indicated transverse ligament strain, although the bony and tendinous structures of the ankle were intact. Other x-rays of the Plaintiff's ankle also revealed no fracture or dislocation. The ALJ states that although Plaintiff has received various forms of treatment for her alleged symptoms, which would usually weight somewhat in her favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. (AR 1390).

In addition to Plaintiff's testimony, the ALJ also considered the Adult Function Report completed by the plaintiff on September 19, 2013, Pain Questionnaire completed by the Plaintiff on October 26, 2014, and the Plaintiff's statement submitted on November 18, 2016 (Exhibits 5E, 6E, 25E). Plaintiff's statements in these reports are of the same general nature as the subjective complaints from the Plaintiff's testimony.

***II. Whether the ALJ Properly Evaluated the Medical Evidence, Including the Statement of Plaintiff's Treating Nurse Practitioner?***

Plaintiff argues that the ALJ improperly gave "little weight" to the opinion of treating nurse practitioner Christina Reynoso. Plaintiff misstates the applicable standard that this Court must apply in reviewing the ALJ's evaluation of nurse practitioner Christina Reynoso. Under the regulations in effect at the time of Plaintiff's application, only licensed physicians, licensed or certified psychologists and certain other qualified specialists were considered "acceptable medical sources." 20 C.F.R. § 404.1513(a) (pre-2017 version). While nurse practitioners are now considered "acceptable medical sources" under 20 C.F.R. § 404.1502(a)(7), this definition explicitly applies only to claims filed on or after March 27, 2017.

The ALJ provided more than sufficient germane reasons for discounting Ms. Reynoso's assessment of Plaintiff's abilities. It was proper for the ALJ to consider Ms. Reynoso's statements in contrast to medical consultants Judy Panek, M.D., and John Arrow, M.D., who opined that Plaintiff had greater functional abilities than Ms. Reynoso assessed (AR 66-69, 87-89 [opining she could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for two hours in a workday, and sit for six hours]). (ECF NO. 12 at p. 9). Plaintiff does not challenge the fact that Drs. Panek and Arnow's opinions contradicted Ms. Reynoso's statements, nor does Plaintiff meaningfully argue why the ALJ's consideration of these opinions was improper. She has therefore waived any challenge to this reason. *See Ruiz v. Comm'r of Soc. Sec.*, 490 Fed. Appx. 907, 908 (9th Cir. 2012) (unpublished) (where claimant challenged only one of five reasons the ALJ gave for rejecting an examining physician's opinion, "[claimant] concedes the first four findings   by not addressing them before the court").

The record supports the ALJ's statement that Plaintiff "reacted positively" to some of her treatments and that such positive reactions contradicted Ms. Reynoso's assessment that Plaintiff was totally disabled (AR 1395). The ALJ noted, Plaintiff had injections, after which she "report[ed] approximately 30% relief" (AR 1391, citing AR 614 [claiming she "definatly [sic] noticed a difference" and was able to go to the grocery store for the first time in six months and walk her dog]). In addition, Plaintiff received a permanent spinal cord stimulator after a trial stimulator, which resulted in improvement in standing, sitting, and walking, as well as being able to perform activities of daily living without significant limitations (AR 1392, citing AR 897, 1044). The ALJ did not refer to these reports of improvement to find that Plaintiff had no limitations, as "[a]n RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9p, available at 1996 WL 374185, at *1.9 The ALJ specifically referenced SSR 03-2p and explained that based on Plaintiff's consistent complaints

of pain and forms of treatment, he reduced her RFC to a less than sedentary range of work (AR 1392).

In so doing, the ALJ was entitled to consider Plaintiff's and her providers' reports of improvement to find that Ms. Reynoso's assessment of Plaintiff's functional abilities—for example, that she could only walk ¼ of a block, sit for 15 minutes at a time, and stand for 10 minutes at a time—was not supported.

Here, the Court finds that the ALJ provided more than sufficient germane reasons for discounting Ms. Reynoso's assessment of Plaintiff's abilities, most of which Plaintiff fails to competently challenge.

The ALJ properly considered that objective medical evidence, Drs. Panek and Arnow's medical opinions, and Plaintiff's reports of some improvement contradicted Ms. Reynoso's assessment. *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

**III. The ALJ Properly Evaluated Medical Opinion Evidence and the RFC Finding Sufficiently Incorporated Limitations from the Medical Opinions that the ALJ Gave Great Weight.**

With regard to medical opinions from acceptable medical sources, Plaintiff argues that: (1) the RFC finding did not sufficiently account for limitations contained in the opinions of psychological consultative examiner Bonnie Winkleman, Psy.D., and State agency psychological consultants Judy K. Martin, M.D., and R. Torigoe, Ph.D., each of which the ALJ assigned "great weight"; and (2) the ALJ improperly rejected the opinion of treating physician Mehrdad Tafreshi (Mot. at 11–12). Plaintiff does not challenge the ALJ's decision to assign "great weight" to Drs. Winkleman, Martin, and

Torigoe's opinions; rather, her challenge is that the ALJ did not incorporate into the RFC finding limitations that corresponded to particular portions of each respective opinion (*id.*).

Plaintiff attended a consultative examination with psychologist Dr. Winkleman (AR 1257–64). Dr. Winkleman opined that Plaintiff could understand, remember, and carry out simple and few detailed tasks without special supervision, but she might not remember and consistently complete complex or detailed tasks without special supervision (AR 1261). She could also sustain attention and concentration for simple and very few detailed tasks without special supervision; would have mild difficulty interacting with supervisors, peers, and the public; and would have difficulty responding appropriately to work pressure in a work setting and working in coordination with and in close proximity to others (AR 1261–62).

The ALJ gave "great weight" to Dr. Winkleman's opinion because it was supported by and consistent with the evidence in the record. (AR 1395). Plaintiff does not challenge these reasons, nor does she challenge the ALJ's decision to give the opinion "great weight" (ECF No.11 at 11–12). Plaintiff argues that the ALJ's RFC finding did not include sufficient limitations to account for those contained in Dr. Winkleman's opinion. Specifically, Plaintiff argues that: (1) the ALJ "failed properly to address the part of Dr. Winkleman's opinion that indicated Plaintiff would likely have moderate difficulty responding appropriately to work pressure or working in coordination with or proximity to others without interference from her symptoms"; and (2) Dr. Winkleman's opinion that Plaintiff "might not remember and consistently complete complex or detailed tasks" and "would probably be unable to sustain attention and concentration for complex or most detailed tasks" is not consistent with a limitation to jobs with reasoning level 2 or 3 (*id.* at 12).

Plaintiff's challenges fail under Ninth Circuit precedent. As to Plaintiff's first challenge, the ALJ adopted limitations in the RFC that sufficiently accounted for Dr. Winkleman's opinion that she

would have "moderate difficulty" responding to work pressures or working in coordination with and in close proximity to others (AR 1262). The ALJ limited Plaintiff to "simple repetitive tasks with a reasoning level of 2–3" and found her "capable of occasional contact with supervisors, coworkers, and the general public" (AR 1390). *In Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), as amended (Feb. 28, 2018), the Ninth Circuit explained that when a physician provides a "qualitative" limitation (such as that a claimant is "moderately limited"), the ALJ may "glean" a "quantitative" limitation that is consistent with the record. *Id.* at 1106–07 (finding no "obvious inconsistency" between opinions that claimant was moderately limited in interactions with coworkers and could relate to others on a superficial work basis and the RFC limitation that claimant was capable of occasional interaction with coworkers). As in *Shaibi*, the ALJ here properly translated Dr. Winkleman's opinion that Plaintiff would have "moderate difficulty" working in coordination with and in close proximity to others by limiting her to "occasional contact with supervisors, coworkers, and the general public" (AR 1262, 1390), with "occasional" meaning that it would "occur[] from very little up to one-third" of a workday. SSR 83-10, 1983 WL 31251, at *5. This limitation is supported by Dr. Winkleman's assessment that Plaintiff "would seem to have [only] mild difficulty interacting with supervisors, and peers, and the public" (AR 1262 [also noting "a history of no difficulty interacting with others"]). There is "no obvious inconsistency" between the opinion and RFC finding, nor does Plaintiff identify one. *Shaibi,* 883 F.3d at 1107. As for Dr. Winkleman's opinion that Plaintiff would have "moderate difficulty responding appropriately to work pressure," this was sufficiently accounted for in the RFC finding with a limitation to simple repetitive tasks (AR 1262, 1390). In another Ninth Circuit case, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the court examined various qualitative limitations provided by two doctors in the areas of pace, attention, concentration, and adaptation, and held that the ALJ properly "translated [claimant's] condition,

including the pace and mental limitations, into the only concrete restriction available to him—[one doctor's] recommended restriction to 'simple tasks.'" *Id.* at 1174. While here Dr. Winkleman only opined that Plaintiff had "moderate difficulty" responding to work pressure, another physician expressed the same opinion in a quantitative form, which the ALJ sufficiently accommodated in the RFC finding.

State agency psychological consultant Dr. Torigoe also opined that Plaintiff was "[m]oderately limited" in her ability to respond appropriately to changes in the work setting, but that her "[a]daptation skills are adequate for a simple job setting" (AR 90–91). As in Stubbs-Danielson, the ALJ properly translated Dr. Winkleman's opinion and took the "only concrete restriction available to him"—that from Dr. Torigoe—and limited her to simple repetitive tasks. There is "no obvious inconsistency" here, as Dr. Winkleman also found Plaintiff could perform "simple and few detailed tasks" (AR 1261). *Shaibi*, 883 F.3d at 1107. The RFC limitation to simple repetitive tasks is further supported by the fact that Dr. Torigoe noted that Plaintiff had a "reduced tolerance to frequent changes" (AR 90); indeed, with repetitive tasks, changes to the work routine would be minimal.

Plaintiff's next challenge (which she further addresses in Section 8.D of her Motion) is that the limitation in the RFC finding for "simple repetitive tasks with a reasoning level of 2–3" is not consistent with Dr. Winkleman's opinion that Plaintiff "might not remember and consistently complete complex or detailed tasks" and "would probably be unable to sustain attention and concentration for complex or most detailed tasks" (Mot. at 12; *see* AR 1262, 1390). In order to be consistent with Dr. Winkleman's opinion, Plaintiff argues that the ALJ should have included a limitation to level 1 reasoning in the RFC (Mot. at 12).

Plaintiff's argument that she could not perform jobs with level 2 reasoning lacks merit. To accommodate Dr. Winkleman's opinion, the ALJ limited Plaintiff to simple repetitive tasks,

which Plaintiff does not object to. But insofar as she asserts that a person who cannot handle detailed instructions—i.e., someone who can only perform simple instructions—cannot perform level 2 reasoning, the Ninth Circuit and courts within this district have indicated such argument must fail. *In Rounds v. Comm'r of Soc. Sec.*, the Ninth Circuit indicated that "[u]npublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning." 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (citing among other cases, *Abrew v. Astrue*, 303 Fed.Appx. 567, 569 (9th Cir. 2008) (unpublished) and *Lara v. Astrue*, 305 Fed.Appx. 324, 326 (9th Cir. 2008) (unpublished)); *see also Hernandez v. Berryhill*, 707 Fed.Appx. 456, 458–59 (9th Cir. 2017) (unpublished) ("There was no apparent conflict between the ALJ's [RFC] determination that [claimant] was 'limited to simple, repetitive tasks' and the vocational expert's testimony that she could work [in a job] requiring 'Level 2' reasoning."). This premise has further been accepted within this district. *See, e.g., Baylor v. Saul*, No. 2:19-cv-00231-EJY, 2020 WL 2475798, at *7 (D. Nev. May 13, 2020) (citing cases to support that there is no conflict with an RFC limitation to "simple, repetitive tasks" and reasoning level two occupations); *Walker v. Colvin, No. 2:14-cv-00480-JCM-PAL*, 2016 WL 11448389, at *11 (D. Nev. Apr. 26, 2016) (Report and Recommendation concluding that "the Ninth Circuit has favorably cit[]ed unpublished decisions within this circuit and opinions from other circuits concluding that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning") (*citing Rounds, Abrew, and Lara*, and various out-of-Circuit decisions).

As to reasoning level 3 jobs, Plaintiff relies on Zavalin and argues there is an apparent conflict between an RFC limiting a claimant to simple repetitive tasks and jobs with reasoning level 3 (Mot. at 17–18). The Commissioner acknowledges that such conflict exists under Zavalin and that jobs with level 3 reasoning are inconsistent with Plaintiff's RFC. 778 F.3d at 847 ("hold[ing] there is an

apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). Plaintiff concedes that all of the jobs identified at step five had reasoning level 2 (Mot. at 17).

### *IV. Harmless Error*

Including reasoning level 3 jobs in the RFB was harmless error. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination" (internal quotations and citations omitted). The ALJ incorporated into the RFC finding limitations that sufficiently accounted for Dr. Winkleman's opinion and her challenges fail under Ninth Circuit authority. Circuit authority further dictates that there was no inconsistency between the RFC for simple repetitive tasks and reasoning level 2 jobs. Insofar as the ALJ should not have included reasoning level 3 jobs in the RFC, this error was harmless, as each of the jobs relied upon at step five were reasoning level 2.

Drs. Martin and Torigoe State agency psychological consultants Drs. Martin and Torigoe opined, among other things, that Plaintiff should be limited to remembering and carrying out simple instructions and have limited public contact (AR 69–71, 89–91). The ALJ gave "great weight" to these opinions because they were supported by and consistent with the objective medical evidence in the record (AR 1396). Plaintiff's only challenge with respect to these opinions is that the doctors' limitation to "simple, not detailed, instructions" is not consistent with the RFC finding. Plaintiff does not elaborate nor explain the inconsistency.

Plaintiff has failed to "specifically and distinctly" explain her argument, she should be deemed to have "waived (or forfeited) this argument." *Deluca v. Berryhill*, 721 Fed.Appx. 608, 610 (9th Cir. 2017) (unpublished) (*citing Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)

(finding party forfeited issue on appeal because "[b]eyond its bold assertion, [plaintiff] provide[d] little if any analysis to assist the court in evaluating its legal challenge") and *Carmickle*, 533 F.3d at 1161 ("We do not address this finding because [claimant] failed to argue this issue with any specificity in his briefing.")).

### V. Unknown Medical Source identified as Dr. Tafreshi

The ALJ gave "little weight" to a medical opinion submitted by an unnamed source, contained in the record, dated December 3, 2019 at Ex. 21F (AR 1565–66). This unknown source opined that secondary to scoliosis and CRPS, the Plaintiff was extremely limited physically and was incapable of performing even sedentary, full-time work. The ALJ found that such severe limitation is not supported by the nature and scope of the Plaintiff's treatment, the objective findings or the state Agency informed opinions. (AR 1395).

The ALJ further explained that Plaintiff had "reacted positively" or improved with various forms of treatment for her CRPS (AR 1395). An additional reason for discounting the opinion, the ALJ explained that the "unknown provider did not start treating the claimant until 2018, which is after the date last insured" (AR 1396).

Plaintiff identifies the unknown source as "treating doctor, Dr. Mehrhad Tafreshi," and argues that the ALJ improperly rejected this opinion, largely incorporating her prior arguments made in connection with challenging the ALJ's discounting of Ms. Reynoso's opinion (Mot. at 12–13).

Here, Plaintiff failed to address the ALJ's additional reason that the signer did not start treating Plaintiff until after her date last insured expired (AR 1396). She has waived any challenge thereto. *Carmickle*, 533 F.3d at 1161 ("We do not address this finding because [claimant] failed to argue this issue with any specificity in his briefing."); *Smith*, 194 F.3d at 1052 (9th Cir. 1999) ("an argument raised for the first time in a reply brief . . . is not an argument that we may consider here");

*Ruiz*, 490 Fed.Appx. at 908 (where claimant challenged only one of five reasons the ALJ gave for rejecting an examining physician's opinion, "[claimant] concedes the first four findings by not addressing them before the court").

Dr. Tafreshi completed the medical opinion form on December 3, 2019, approximately one year after Plaintiff's DLI expired. The doctor, however, did not explain in the form or provide any basis for how his opinion related back to 2013; and, in fact, he indicated on the form that he did not begin treating Plaintiff until some time in 2018 (AR 1566).

The court finds that the ALJ may reject a medical opinion provided after a claimant's DLI expired or based on examinations after the DLI expired. *In Schalk v. Berryhill*, the ALJ "reasonably discounted" a physician's opinion because the doctor's examination and opinion occurred after the DLI and "she did not indicate how these limitations would have applied in the past." 734 Fed.Appx. 475, 478 (9th Cir. 2018) (unpublished) (*citing Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (holding that it was appropriate for the ALJ to discount an opinion rendered a year and a half after the date last insured)). In *Schalk*, a treating physician's opinion could be discounted because the doctor "first saw" claimant "two months before the date last insured," whereas here, Dr. Tafreshi did not see Plaintiff at all during the relevant period and began only after her DLI expired. 734 Fed.Appx. at 478; *see also Cherpes v. Berryhill*, 727 Fed.Appx. 319, 321 (9th Cir. 2018) (unpublished) (finding no error in giving "little weight" to evaluation forms completed by doctor because they were based on examinations that occurred after claimant's DLI expired) (*citing Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996)); *see also Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

Here, the court finds that "the ALJ provided specific and legitimate reasons supported by substantial evidence to justify her rejection of [a doctor's] opinion, [a court need] not address

15

[claimant's] argument that other reasons provided by the ALJ were not supported by the record." *Ford*, 950 F.3d at 1156 n.8 (*citing Carmickle*, 533 F.3d at 1162); *see also Grammer v. Berryhill*, 706 Fed.Appx. 383, 384 (9th Cir. 2017) (unpublished) ("Any error in relying on additional reasons is harmless because the ALJ properly provided several specific and legitimate reasons to reject [the doctor's] opinion") (*citing Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

### *VI. Discounting Plaintiff's Husband's Statement*

The ALJ considered but gave no weight to the statement submitted by Plaintiff's husband, Richard Bubna, generally stating that Plaintiff has difficulty walking long distances, lifting anything over 10 pounds, and sitting or standing for long periods. The ALJ gave no weight to Richard Bubna's observation because , (1) he is not a medical source and as a lay witness is "not competent" to assess the severity of her symptoms in relationship to her ability to work; (2) the ALJ found opinions of medical professionals to be more persuasive; and (3) the husband's assessment was not supported by objective findings and not consistent with treating records. (AR 1396).  The Court finds that an ALJ may "discount testimony of lay witnesses" if the ALJ gives "reasons germane to each witness." *Valentine*, 574 F.3d at 694.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal or Remand (ECF NO. 11) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's Cross-Motion to Affirm (ECF NO. 12) is GRANTED.

The clerk of court is instructed to enter final judgment in favor of defendant Andrew Saul and against plaintiff Wendy W. Bubna.

DATED this 8th day of March, 2021.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE